these arguments where people split up this itty bitty time and how in the world you say anything in two minutes and three minute bites. In 26 years on this court I have rarely seen it successfully done. Either people don't say anything or they run over time. So maybe this will be the day on Zoom that you all have amazingly figured out how to say three minutes, three minutes, three minutes. But anyway we're going to give it give it a good effort. It's an important case and so you know we'll we'll go with it. All right so first up is Mr. Hughes who has 10 minutes and has saved for about four minutes and then Ms. Allende and then Mr. is it ready or ready? It's ready your honor. Ready all right. Stay ready you don't have to get ready right. Okay um all right here we go. All right Mr. Hughes. Thank you Judge Stewart and may it please the court. The district court erred in granting the preliminary injunction because magistration in Galveston is not a critical stage. Magistration under Texas law is not an adversarial trial-like proceeding and nor is magistration likely to prevent an arrestee from getting a effectively seal his fate and that is particularly true in Galveston where arrestees get a council bail review hearing just 12 hours after magistration. Those individualized bail hearings were designed based on the bail hearings that this court endorsed in O'Donnell and the district court's reasons for rejecting them are unpersuasive. Mr. Hughes I know you want to get into that issue about the critical proceeding whether that's what this is. I have a procedural question which is there's another appeal challenging the class certification and raising I mean I've looked at the briefs I skimmed them in that case a host of jurisdictional challenges to what the district court's doing in this case. Through no fault of any of the lawyers here you know that was briefed first but now this case is set for argument first. I mean it seems to me we we would have to decide not us maybe not that same panel but our court would have to resolve the jurisdictional challenges to class certification and the like before addressing the merits of the injunction. I'm just curious what your thoughts are on that and if if you think we do have to wait for that appeal to be decided first. Judge Costa that's a really good question and certainly if there's no jurisdiction then I think both of the cases go away or both of the appeals go away by the same token if we prevail in the class certification and the class cert order goes away then there's no certified class and this appeal goes away as well. So I think either of those reasons would be a sufficient reason perhaps to to see what the outcome of the other one is. On the other hand we've got an injunction ongoing here uh we did not seek a stay of that pending appeal but they're you know that's I guess a factor to consider. Are you the lawyer on that other case? I am representing the the district or felony judges. Right for part I mean part of the same parties here you're representing um yeah I mean it just seems to me I know obviously you think we should you know vacate the injunction here but I mean I I mean if if we were to you know what if we were to affirm the injunction on the merits and then three months later a different panel says oh no there was never jurisdiction in the first place because you know the class shouldn't have been I mean I just it just seems to me that that would have to come first but anyway you can get back into the merits of your I'm I'm curious what the other lawyers think of that as well when they when they get their turn. Okay thank you judge. Um just some quick points there's there's nothing that is trial-like or adversarial about magistration in Texas as the district court found the magistrate simply explains the charges reads the arrestee their rights may ask a question or two about their financial circumstances and sets bail. That is very different from the hotly contested adversarial evidentiary hearing described in Coleman. It's much closer to the non-adversarial evidentiary hearing or excuse me probable cause hearing described in Gerstein which was not a appearance. Are the detainees or the arrestees advised that there will be a council bail review hearing soon? Judge Clement they are advised at least I know that they are advised if they decline in the process where they go through the financial interview in the person the bond office. If at that time they say they don't want to do the interview and provide their sign and they're advised at that time if you don't provide this then you will not get a bail review hearing. So they are advised of it at least if they decline the interview and it's possible that magistrates may be providing it additionally but I'm simply not aware of that. So that's at that the separate conference after or is that before the magistration? That's before the magistration and it tracks exactly what this court set forth in O'Donnell. The questions that are in the interview the financial interview come right out of O'Donnell the sample injunction there and I believe it's at page 3780 of the record that form which is called the interview option form that is signed if they decline to provide their financial information for the magistrate because what's so important about that information and this has changed under the county's current system consistent with O'Donnell they want to make sure that the magistrate has all that financial information in front of them when they make the initial bail determination. It's unlike the prior system and again that's following what this court set forth in O'Donnell as the right way to go. So second point about this is one more question about the the review bail review hearings. I think only some people my understanding is only some people get those for example if you say at the initial hearing oh I can yeah I can I can afford a ten thousand dollar bond and then it turns out you know your family won't give you the money and you need to ask for that to be those people if you agree to if you say you can pay the amount you don't later get a hearing right? That is correct Judge Costa and a couple points about that again the questions that are being used to develop that information they come right out of O'Donnell in the injunction that this court approved and second of all the testimony at the hearing at the class cert and PI hearing that if the arrestee's financial circumstances changed or he realizes he made a mistake that the magistrates will entertain that at the at the magistration. In other words the arrestee can say hey I forgot to tell you um that or I made a mistake in thinking that I had these assets I really don't and Judge Hindman I believe it was the one who testified there and said yeah well we hear that if the arrestee wants to add that. That's really my question when do they hear this I mean the first day you say oh I can afford ten thousand dollars and then you know you call mom and mom says sorry I'm tired of you getting into trouble I'm not giving you a dime how do you how do but you're not automatically going to get that hearing the next day because you you thought you could meet the bond how do you raise it you just thought you get a lawyer and they file something with the court. So right they will get an appointed lawyer very quickly assuming they qualify for one or actually they'll get one either way but and then they can always raise that if they don't get a bail review hearing they can simply raise it in the district court by filing a habeas writ and that will be heard quickly. So again that's I mean these categories are these narrow categories there are a couple other categories of people who don't get the bail review hearing but they're O'Donnell also had categories of folks who don't get the individualized hearing a lot of them are people who aren't entitled to release because they were brought in the magistrated elsewhere or they have a for example a federal immigration hold on them things like that they're not eligible for lease so it makes sense that they they wouldn't be able to get that. Just I want to turn quickly to the magistrate or the district court judges two reasons for refusing for concluding that the bail review hearings are inadequate. One he said there's a substantial risk of self-incrimination no evidence at all supports that in fact the plaintiffs pivot away they don't try to to defend substantial risk they just say if there's any possibility of it happening then that's sufficient to create a criminal stage both this court's precedents and the supreme court's reject that notion this court said in the Robles case whether proceeding is a critical stage depends on whether there was a reasonable probability that the defendant's case could suffer significant consequences and that's consistent with both Gerstein which talked about the high probability of substantial harm and Wade which talked about the grave potential for prejudice and these isolated examples they don't have in the year and a half that this case was pending before the injunction was entered they the plaintiffs have access to all of those magistrations they don't point to a single example of an arrestee incriminating himself in Galveston County uh and their experts uh alex bun in the Harris County public defender had to go through three years of magistrations in Harris County to find a single example so the notion that this is happening all the time is simply not supported by the record other the other uh element that the district court relied on was what it called the slight possibility of an anchoring effect again there's simply evidence does not support uh the anchoring effect notion plaintiff's own expert uh dr colbert for decades has been advocating council bail review hearings as what is needed to help arrestees in this situation and he acknowledged that in Galveston County uh at the bail review hearings the arrestees are has made all the difference in the world that completely undermines the anchoring theory and there's no other evidence to support it it was simply mr bun and a professor colbert saying their experience in other jurisdictions they felt like they're in anchoring uh phenomenon existed but they're not psychologists they're not qualified to testify to that and they had no data backing it up whatsoever i see my time has expired if the court has further questions i'll be happy to answer you all right thank you mr use you preserved your rebuttal time all right miss a lovely is that how you pronounce it yes your honor all right you're on may please support angie alalde for the criminal district attorney of galveston county i wanted to begin very quickly question on the uh related appeal and certainly we are presenting several there's a mootness claim for the district attorney in that case as well and i think that that would have a severe impact on the the ruling and the outcome of this case the district attorney's position in this particular appeal is a little bit um different than the other parties as well because we are a non-party to the injunction order and that was one of our arguments in the brief is that even though we are a non-party to this particular order we meet the castillo three-factor test of being you know involved in the proceedings below and the district attorney as representing criminal the state of texas and criminal proceedings in galveston county has a direct and personal stake in the outcome of this injunction but i also share mr hughes's concern about the fact that right now there is no stay and so the injunction is currently being complied with as the case progresses at this time i mean someone could have filed for a stay i mean obviously that was a decision the parties made your honor i agree your honor we we probably could still right uh to hit the critical stage aspects um i think the appellees are shifting the focus of the harm when you boil this down this comes down to the question of what harm is being presented and so they shift the focus in critical stage analysis from whether a high probability of substantial harm exists that could impair the right to a fair trial to whether any type of harm potentially exists but in doing so they're ignoring that in galveston county in particular that o'donnell 48 hour hearing happens within 24 hours with counsel present and that's faster than most jurisdictions in texas and this eliminates the the high probability of substantial harm to the right to a fair trial because review is available pre-trial and because of that this is not a critical stage but the practical effect of the injunction in this case could ripple well beyond galveston county because what's going to happen is that more people could spend more time in jail so if setting bail or setting any condition of pre-trial release under the injunction because it's a little bit broader than just bail if that's deemed to be a critical stage at the initial appearance that means that people will not be able to obtain release until counsel can be present at that initial appearance and so beyond galveston county if the mclaughlin time period of 48 hours applies as it would in a probable cause determination you could have people sitting in jail without the ability to obtain release and that would be problematic all right thank you all right mr ray thank you your honor and may it please the court call ready for galveston county texas i want to address a couple of the questions that are on the table before i get into the points i wanted to start with here judge costas question about mootness the county's view is that obviously jurisdiction is fundamental to any other decision and so the question of mootness does need to be decided before the merits are reached there was not a motion to consolidate the appeals file but i just would remind the court that the control its own docket and ensure that those decisions come out in the right order but in any regard the question of mootness is fundamental to the other questions and has to be resolved first with respect to judge clinton's question are the people going through magistration advised of the fact that there will be a bail review that would vary based on the individual magistration and the individual magistrate who's conducting it it would have to be an inquiry that would be specific to each individual person where they told this or that the same way that whether somebody receives miranda warnings as individual to the defendant because obviously it would be a good idea for an officer to give miranda warnings but we all know sometimes it doesn't happen with respect to the other points i wanted to make sure that the court is aware of even if this court finds that bail setting is a critical stage there are independent reasons that the decision below committed error when it enjoined galveston county on the sixth amendment issue and that is specifically because the judges in question are state district judges who are administering the fair defense plan and those are state actors acting under a state statute and that is an important difference between this case and o'donnell that makes this case more similar to davis versus tarrant county this court's precedent in davis versus tarrant county specifically held that state district court judges who were administering the fair defense plan were state actors performing a judicial function and the county could not be held liable for those actions which is different from o'donnell where we had misdemeanor judges those are county court of law as opposed to state district judges who are state officials and it's different from o'donnell because we're dealing with the administration of the fair defense plan which occurs under a state statute code of criminal procedure article 26.04 where there is no state statute that regards the establishment of a local bail schedule which is the policy that was in question in o'donnell and those two distinctions make all the difference in the world about whether this case with respect to the county should end up more like davis and less like o'donnell. All right thank you sir. All right we turn to Mr. Booth's counsel Miss Trigilio is that right? Trigilio your honor. Trigilio I'm saying it corrected thank you. Thank you good morning your honors may it please the court Tricia Trigilio for plaintiff Aaron Booth. I'd like address a few of the questions that payroll reviews specific questions about the other pending appeal and about the bail review process itself. Before I do that I'd like to give the court a brief overview of why the district court's injunction here was not an abuse of discretion. The district court determined correctly that there is a right to counsel at Galveston county magistrations where magistrates are setting bail and questioning arrestees on camera and then video recordings of the arrestees answer are later admissible against them at trial. The district court found it's not really possible for arrestees to make it through this proceeding without risking their substantial rights in one of two ways either give up the right to silence and risk making an incriminating statement or remain silent but give up the right to be heard on bail and risk lengthy and unnecessary pre-trial detention. Those findings were supported by an extensive factual record that was developed before Judge Edison over months. It included 12 hours of live testimony unrebutted expert testimony from three career public defenders who testified to the specific risks that can result from uncounseled magistration video recordings of arrestees speaking at Galveston whatsoever which is the only party against whom we sought this injunction and so I'm curious if um I mean it seems to me those same concerns if they're valid would apply to the initial appearances in federal court I mean here's what happens which everyone may be familiar with but I'll just let's say this morning the FBI arrests someone on a federal charge they would get an initial appearance today in federal court before a magistrate judge now you know you could have a lawyer but oftentimes you don't yet have a lawyer so you either that's the thing the first thing the magistrate judge asked after reading what the charge is says well what are you going to do about a lawyer and the person might the defendant might say well I'm going to go try to hire one you know take me a few days I'm going to try to hire one um if they can afford one if they can't afford one they fill out a financial david affidavit and the magistrate judge um says okay well I'm going to appoint a lawyer but unless they appoint the public defender who may have someone in court that court appointed lawyer is not going to be present that day then the next order of business the magistrate judge says oh I've gotten your you know pretrial services interviewed you about your financial situation and you know they're recommending a bond of whatever um and what's the government's position and the government can move for detention and in federal court if they move for detention you have to wait a few days anyway um but if the government says yeah we can we agree to a bond then that federal magistrate judge based on the pretrial services report says okay I'm going to set bond at x dollars and there's no lawyer there so how do you just maybe you think that I guess the question is one do you think that's unconstitutional if not how is it distinguishable well your honor there are I will start with your second point first there are a few important distinctions between the way Galveston county conducts magistration and the federal system I think the most important one is that magistrates are questioning arrestees on the record not just reading them their charges and asking them if they want a lawyer as the defendants isn't that questioning on the record is what you're saying and gives rise to this concern about self-incrimination yes why isn't that so why isn't that self-incrimination concern just as valid I'm sure today in the building I'm sitting in there are some initial appearances I mean putting zoom to the side but um and you're right they're questioning those defendants why doesn't that raise the same fifth amendment concern that that defendant might say something incriminating well the magistrate is is in the federal proceeding not asking the question do you have any charges pending in other stictions jurisdictions from which you're out on bail are you a citizen of the United States do you think you qualify for a bill review hearing are you going to be able to pay a bail bondsman for the bill that I order today at magistration and the record shows that answers to those questions can potentially incriminate defendants in Galveston County video recordings of Galveston County I thought you said the federal judges are asking that I'm confused they're they're at the initial appearance in federal court they're not asking those type of questions that's how Galveston County registration is distinguishable well it's all in the pretrial services report not I've been in I mean we don't I don't want to keep getting into I've been in federal court many times for initial appearances and the judge might say well the pretrial services report you know says you've got a warrant out of of Georgia you know are you you know I mean it does come up anyway it does it does come up but there's an important difference between that information being pulled from a database and being included in a report and arrestee being questioned about it and here's what it is in the recordings of Galveston County magistrations it shows arrestees when they're confronted with this information about themselves doing things like trying to explain their reasons for failure to appear which is itself a separate criminal offense trying to explain the reasons why that warrant for a probation violation issued these are all videos that are in the record at 339-343 and so by questioning the arrestees on the record it's prompting them to make an uncounseled strategic decision do I give up my right to silence here and risk incriminating myself which they very obviously can do or do I remain silent and not try to make a case for an individualized and prompt release and another point that I'd like to make here concerns the operation of the bail review procedures so defendants have pointed to the written bail review policy and said well arrestees are advised that if they waive this financial interview they're not going to get a bail review there's two problems with that one is that they're not advised that the bail review hearing will be counseled so as far as they're concerned they're going to be brought in one time and then another and it's just more of um and in addition the the test I thought the bail review hearings are basically like it's in the same courtroom so you come in for this initial hearing and it just there's also people in there who were brought in the day before who are now there for their bail review in other words I thought it was all happening in the same courtroom maybe I don't understand that's exactly right your honor um so they would understand that there's going to be a separate I mean they're watching it with their own eyes well at the outset arrestees don't know what like what that is that's happening before them they don't know that they're going to get a lawyer 12 hours later and what I'm trying to point out is that regardless of what the written policy says they're supposed to read to arrestees who are declining the financial interview testimony before Judge Edison indicated that they're not actually doing so and so this is in the record from the personal bond officer at six six four nine he testified that they basically tell arrestees are you sure you don't want to complete this interview it can only help you which is false um and if if they if they disagree they go ahead and sign the form and that's a way that they can be omitted from the bail review process there's another more glaring way that arrestees are omitted from the bail review process and it's in the way that Galveston County assesses who is able to afford the bond that's ordered at magistration so the way that Galveston County assesses this is just through an excel spreadsheet formula that frankly has a garbage in garbage out problem the only number that's plugged into that formula that comes from the arrestee comes from the final question that's asked in the financial interview where they ask arrestees shortly after they've been booked into jail how much money do you guess your family is going to be able to pay a bail bondsman within the next 24 hours for your release and their answer to that question is treated as fact not an estimate it's plugged into an excel spreadsheet and the output from that spreadsheet is the only way to secure a 12-hour bail review hearing there's no way to ask for one and this prop this process is problematic because as magistrate judge hindman testified well arrestees are often wrong about how much money their family is going to be able to pay to a bail bondsman within the next 24 hours she testified and i quote they put 5 000 when they can really only afford zero that's in the record at 67 61 she also testified that because this is booked into jail they're often high or drunk and they might not understand the implication of the question because they often before her don't even remember what number they've put down and what's important to remember about these arrestees is that they're going to be completely excluded from that 12-hour bail review hearing and effectively jailed under the old system so magistration is their only opportunity to have a prompt and individualized bail determination they're not going to get counsel there they're not getting the findings that are required under o'donnell because magistrates are not required to make findings on the record in that proceeding and they're going to be potentially detained for weeks because the record shows it takes two to four days for them to actually have an attorney appointed and then after that once that attorney files a bail reduction motion galveston county's local rules delay a hearing on that motion for a minimum of 10 days uh there was a defense attorney who testified in the record below that it's common for these motions to take two to six weeks to be heard so to mr hughes's point that for people who are admitted from bail review they can just seek review in the district court that's belied by the record where did judge edison address that though i mean i saw he said there's two problems with bail review hearings one they're not you know there's the risk of the magistration they'll already be incriminating statements two there might be this anchoring effect of the the bond was set up the first day i mean i didn't see where he got into there's these other procedural problems and not everyone's going to know about it or get a hearing i said that has been found in his in the initial section of his opinions his opinion he found um that under the old system without the 12-hour bail review hearing it takes arrestees a minimum of days often weeks to have their bail reduction motions actually heard i would i would also remind the court that the review of judge edison's findings and this goes to the next point that i'm about to launch into the review is for clear error only so the question is whether judge edison's finding that there is a substantial risk that defendants will incriminate themselves at galveston county magistration is a plausible finding in light of the record of a whole of the the record as a whole uh which is what's better for defendants a system um like the new galveston post o'donnell system um with with you get in the first day that there's going to be a bond set and a lot of people walk out the courthouse door meeting that bond without having to spend a night in jail which no one wants to spend even a night in jail or is this just and then the next day you have a hearing with a lawyer maybe a few people don't get that hearing and have to wait till they get a full lawyer appointed and that takes a week or two um what's better that system or a system where um you don't get a hearing the first day and then you have to get a lawyer and that so you're only getting a hearing on the second day so no one's getting bonded out the first day i mean this is sort of the da council's point that she made what's your response to what's the better situation for a defendant i would like to address that point and uh i mean i would say that defendants have teed up a false choice here and that will be apparent to the court if you look at the videos of bail review hearings and magistrations that are in the record at 8 7 9 7 judge costa you're correct the way these hearings are conducted they have a defense attorney and everyone who's qualified for bail review in the same room that magistration is conducted in every day at 7 a.m and 7 p.m they conduct the bail review hearings and then they literally send the defense attorney out of the room in order to suggesting that providing counsel which is asking the attorney of the day to stay and represent arrestees at magistration would actually delay these hearings if the court i'm not i'm not focused so much on galveston but if if we were to say agree that the very first appearance the magistration under this texas statute is a critical proceeding maybe some counties especially less populous counties that aren't gonna you know maybe have two hearings a day and all these a lawyer always standing by might say okay well to follow that the first hearing has to have an attorney that's not that's gonna take 48 hours so so you're not gonna get if you're arrested this morning you're not gonna get a chance to bail out before you spend a night in jail well there your honor i would also that's my concern it's not so not so much galveston but what our holding would mean for other counties that have different dynamics so there's not necessarily a reason why arrestees would need to behold pending that counseled hearing even if that counseled hearing took 48 hours because under the code of criminal procedure article 17.22 it allows the sheriff to set bail and release arrestees for felony arrestees when court is not in session so for those who would be able to pay here in galveston the prosecutors recommended bail amount or in other places a pre-scheduled bail amount the sheriff is free to release them under the code and for those who are unable to pay they would be detained pending their hearing either way so it's not really doing anything to harm defendants if we require provision of counsel and magistration if the court doesn't have other questions on that point i'd like to cover the suggestion no that is the sheriff have the the financial information that people fill out when they go before this magistration uh i believe the sheriff has access to that information but in any case they wouldn't need access to it because if the sheriff were releasing people under a bail schedule all the sheriff would have to do is say if you can afford it based on your charge i'll let you go in galveston they would say if you can afford the amount of money the prosecutor is recommending i'll let you go if not you're going to get it i thought those schedules are a real problem isn't that what o'donnell's all about you need a judge i'm just i'm really kind of surprised you're saying you'd rather have a sheriff making the initial determination by a schedule as opposed to a judge making what o'donnell says needs to be an individualized determination looking at a number of factors and i want to be clear your honor this isn't a determination a bail determination that the sheriff is making this is the system that was contemplated in the second o'donnell appeal in the good heart appeal that they're that pending the counseled 48-hour hearing where there's full findings required on the record uh that there will be that there is a schedule of bail imposed and you can tell that because it says for arrestees who can't afford the pre-scheduled bail they have to attest that they can't afford the pre-scheduled bail then they're provided with this counsel with this uh you know robust bail hearing um so it contemplates the fact that some people are going to be able to pay the scheduled bail there it's tying the arrestees hands here i mean i think i would direct the court to united states versus wade where they say you know we're not imply applying a constitutional straitjacket we're not saying that localities can't layer local practices on top of the requirements of state law that might remove the basis for considering this hearing to be a critical stage of prosecution but in order to do that those local practices have to quote eliminate the risk that made the proceeding a critical stage in the first place and here galveston county has not done that because of the obvious ways that arrestees can be excluded from the essential 12-hour bail review hearing not to mention the fact that bail review hearings do nothing to remedy incriminating statements that arrestees might make at magistration all right let me ask you a question about that um just clarify for me you can be saying both sides what's in the record uh i understood counsel to say that even with the expert's testimony mr boone and i guess it is had evaluated two three years worth of data or whatever whatever and found either only a single incident or a few incidents of actually incriminating you know statements and it was something averting to not only looking at galveston but adjacent jason county some i'm not hung up on whether or not there's some magic number that would have to appear but i am trying to get a better sense of uh the the argument being made about quote incriminating statements you know being used from the video etc so i want your answer to you know is that correct that i mean this doesn't happen and i'm not suggesting if it happens twice that's too few or whatever but i do want your take on and then secondly where it has happened have there been been for example an objection by counsel in the later proceeding to the use of that videotape incriminating information saying i object to being used he was uncounseled quash it strike it etc and has that you know been the same as you would try to do in some other adversary yeah they did it but he didn't know it was going to be used against him quash it any any kind of record or rulings there you know just trying to get a handle where we're talking about not an abstract argument but but to get a sense of the real-time way this is working or doesn't work you follow me yes absolutely your honor taking your last question first i direct the court to united states versus dom where this court specifically held that it is not a unconstitutionally compelling defendants to testify against themselves if they represent themselves at bail hearings so there wouldn't be a reason to file that suppression motion because there wouldn't be a basis for it this court has already held it's not a basis for excluding the statements at trial second on the point of evidence supporting the risk of self incrimination i'd like to make three points one's about the nature of that question one's about the defendant's lack of rebuttal so first it would have been enough for judge edison to just examine evidence of galveston county's policies and practices and determine that the nature of galveston county magistrations inherently poses a risk of self-incrimination that's the way the court proceeded in coleman in estelle they don't demand that indigent defendants come to federal court with a robust empirical study of how often these cases can result in statements uh that said judge edison did to my second point entertain a great deal of evidence that there there is a risk of incriminating statements that bears itself out in galveston county first i would point the court back to the video recordings these are recordings of magistration over just one a one week period showing arrestees speaking on a near daily basis defendants want you to ignore these recordings of magistration because they're from before the bail review hearings were implemented but i'd remind the court the bail review hearings don't do anything to alter the procedure at magistration except the magistrates are expected to actively ask arrestees an additional question about what they can afford and um third i would point the court to unrebutted expert testimony from all three of our experts they consistently testify to a common sense conclusion which is that when arrestees are brought before a judge for the first time after they've been booked into jail and they understand that the judge is making a decision about whether or not they can come home uh that they're they are prompted to speak about the circumstances of the allegations against them and try to advocate for their release and that can hurt their case mr bunnings declaration wasn't purporting to identify every single case in harris county where people had incriminate themselves incriminated themselves i see that my time is up all right okay thank you i might ask the court um if i could just briefly address the jurisdictional question which i wasn't able to reach but it's obviously a threshold question here go ahead i would just briefly note that the jurisdictional argument that's made in the class certification appeal is largely premised on implementation of the bail review procedures which do nothing to provide counsel and magistration which is the claim at issue here so to the extent that that court holds that some claims are moot it's very unlikely to hold the sixth amendment claim is moot all right thank you all right we're back to you mr hughes thank you judge stewart may it please the court uh i want to start with um counsel's last point about the videos in galveston county my main point about those videos is as counsel just described them what they depict are arrestees speaking at magistration what they don't depict are arrestees incriminating themselves at magistration if they had a video like that they would be pointing it out to this court and they're not doing that they're just saying look at the videos collectively and you'll see examples of arrestees speaking at magistration which of course they speak at magistration because they are sometimes asked questions about their financial circumstances second point i'd like to that a defendant is compelled or coerced into making uh incriminating statements at a bail hearing because as the court said the subject of the bail hearing doesn't relate to the merits and that's true under both the federal um bail law at issue and the texas law in the sense that they have similar um similar provisions of including consideration of the nature and circumstances of the offense for which the arrestee was arrested um mr giulio also mentioned um the point about the concern about lengthy pretrial detention and the the point i want to drive home on that to the court is it's only unwarranted pretrial detention that is really at issue here it is true that under the current system it is possible for an arrestee to experience extended pretrial detention but if he does it is because of his own criminal history or the the facts of the offense for which he's arrested it is not because he lacked an attorney to advocate for him at a bail hearing uh my third point i wanted to make um counsel's reference to the garbage in out again that financial interview and the information that is derived from that that is comes verbatim uh from this court's decision in o'donnell and at the uh the p.i hearing players experts i think it was dr jones was asked what's a better what better questions could you come up with and he said there aren't any i can't come up with any better questions they're just saying inherently uh defendants i guess can't can't uh estimate what their finances are and if that's the case it's hardly galveston county's fault um counsel also mentioned the substantial risk i want to point out uh planners did not try to defend the district court's substantial risk ruling instead they pivoted to the notion that any risk is sufficient and as i mentioned this this court's decisions and the supreme court's present reject that notion and no amount of deference can get them around the problem that there simply is not any competent evidence supporting a substantial risk of self-incrimination or anything approaching one and regardless of what standards you use reasonable probability substantial risk there's no use to support that in the record um judge cost it's your question about sort of the practical consequences um of the of the constitutional ruling here galveston county doesn't have a public defender um and so it is a real burden on the private the attorneys who are appointed uh to conduct these hearings to come in and do them at 7 a.m and then at 7 p.m when they were trying to do their own attorneys already there for the bail review hearings they want to use why not use the same attorney i don't they are and you could do that but uh you'd either be requiring double the number of attorneys if you keep the bail review hearing or if you substitute attorneys at the initial hearing in place of a council bail review hearing there are other problems with that and those problems include um sort of a chicken and egg problem of you really have if you're going to do that and provide counsel just up front there's no way to figure out you're going to have to point it to provide it to everybody because at that stage i don't know how you're going to sort out who's indigent and who's not and the state is not supposed to be providing counsel to people who are not indigent but if we don't have the financial information to determine who is indigent and who's not then they really shouldn't be getting counsel so that's a problem there in addition to the problem as professor colbert talked about in his deposition if if you rush this uh the counsel hearing up to the very earliest point in time when it could occur and again under the constant oh i'm seeing i'm out of time uh interesting finish your comment thank you judge um that this just goes to the point that galveston county is well within the 48 hour window that the court described in o'Donnell uh we would urge the court to reverse the decision below and vacate the preliminary injunction thank you all right thank you counsel um each of you ably navigated your respective times and i commend you for being able to do that uh covered a lot of ground there's a lot involved in this case not the least of this other collateral one but the case will be submitted and we will unravel it and get an opinion out as soon as we can um that can can concludes everything all right well i might as well be consistent mr hughes where are you in austin no you're in galveston uh no sir i'm in austin in austin should have guessed right to start with okay miss alana where are you we're in a galveston county we're in league city your honor all right somebody's in galveston mr ready where are you i'm in houston texas your honor all right and mr jill where are you i'm also in houston your honor all right everybody's in the and this will conclude our third case for all argument thank all of you